UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

KNOLL, INC.,

             Plaintiff,

    v.

MODERNO, INC. d/b/a REGENCY
SHOP and MIKE SAXENA,

             Defendants.

———————————————————————

Case No. 11 CV 0488 (AKH)

## Memorandum in Opposition to Defendants' Motion to Dismiss under Rule 12(b)(2) and 12(b)(3) for Lack of Personal Jurisdiction and Improper Venue, and, in the alternative, to Stay the Case to Take Jurisdictional and Venue Discovery

GOTTLIEB, RACKMAN & REISMAN, PC

George Gottlieb
Marc P. Misthal
Ariel S. Peikes
270 Madison Avenue, 8th Floor
New York, NY 10016
Tel: (212) 684-3900
Fax: (212) 684-3999

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................i

PRELIMINARY STATEMENT....................................................1

STATEMENT OF MATERIAL FACTS......................................3
    I.      Facts Relevant to Knoll...........................................3
    II.     Facts Relevant to Defendants................................5

LEGAL ARGUMENT................................................................6

Point I – PERSONAL JURISDICTION EXISTS PURSUANT
TO THE NEW YORK LONG-ARM STATUTE..............................6

   A. Jurisdiction over the Defendants Exists Pursuant to NY
      CPLR § 302(a)(1) ..........................................................8

   B. Jurisdiction Exists Pursuant to NY CPLR § 302(a)(2)............12

   C. Jurisdiction Over Defendants also Exists
      Pursuant to § 302(a)(3) ..................................................13

   D. Defendants' Reliance on *American Buddha* is Misplaced.......14

Point II - JURISDICTION OVER THE DEFENDANTS DOES
NOT VIOLATE DUE PROCESS...................................................16

   (A) Minimum Contacts Exist with New York State....................16

   (B) Jurisdiction over the Defendants is 'Reasonable'................18

Point III - THE SOUTHERN DISTRICT OF NEW YORK
IS A PROPER VENUE.............................................................21

POINT IV - IF THE COURT HAS ANY DOUBT THAT
JURISDICTION AND VENUE IN THE SOUTHERN DISTRICT
OF NEW YORK ARE PROPER, PLAINTIFF REQUESTS LEAVE
TO TAKE JURISDICTIONAL AND VENUE DISCOVERY................23

CONCLUSION......................................................................26

ATTACHED EXHIBITS

   1) Declaration of Elizabeth Needle
   2) Declaration of Ariel Peikes, Esq.

# TABLE OF AUTHORITIES

## STATUTES

15 U.S.C. §§1114 et seq. ...........................................................1, 16
15 U.S.C. §§1125 et seq. ...........................................................1, 16
28 U.S.C. § 1391..................................................................21-22
28 U.S.C. § 1404(a)...............................................................23

N.Y. C.P.L.R. § 302(a) ...........................................................*passim*

## CASES

American Network, Inc. v. Access America/Connect Atlanta,
975 F.Supp. 494, 497 (SDNY 1997) ...........................................13

A.P.W.U. v. Potter, 343 F.3d 619, 627 (2nd Cir. 2003) ....................23

Bank Brussels Lambert v. Fiddler Gonzalez,
305 F.3d 120 (2nd Cir. 2002) .....................................................17-19

Baron Philippe De Rothschild, S.A. v. Societte Civile Chateau
Lafite Rothschild, 923 F.Supp. 433 (SDNY 1996) ..........................3, 11, 21

BHP Trading (UK) Limited v. Deep Sea International Shipping
Company, 1991 U.S. Dist. LEXIS 13220 (SDNY 1991) ....................24

Chloe v. Queen Bee of Beverly Hills, 616 F.3d 158 (2nd Cir. 2010)......*passim*

Citigroup v. Citi Holding Company, 97 F.Supp 2d 549 (SDNY 2000)...12-16

German Educational Television Network, Ltd. v. Oregon Public
Broadcasting Co., 569 F.Supp.1529, 1532 (SDNY 1983) .................12

H.L. Moore Drug Exchange, Inc. v. Smith Kline & French Labs.,
384 F.2d 97 (2nd Cir. 1967) ........................................................24

Jaguar Cars, Ltd. v. National Football League,
886 F.Supp. 335, 337-338 (SDNY 1995) ......................................21

Mattel, Inc. v. Adventure Apparel,
2001 U.S. Dist. LEXIS 3179 (SDNY 2001) ....................................10-11,16

Penguin Group (USA) Inc. v. American Buddha,
16 N.Y3d. 295 (NY 2011) ...............................................................14-16

Winston & Strawn v. Dong Won Securities Co.,
2002 U.S. Dist. LEXIS 20952 (SDNY 2002) ………………….…………...24

.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KNOLL, INC., | : Case No. 11 CV 0488 (AKH) |
| Plaintiff, | : **Plaintiff's Opposition to** |
| | : **Defendants' Motion to Dismiss** |
| v. | : **Under Rules 12(B)(2) and 12(B)(3),** |
| | : **and, in the alternative, To Stay the** |
| MODERNO, INC. d/b/a REGENCY | : **Case to Take Jurisdictional and Venue** |
| SHOP and MIKE SAXENA, | : **Discovery** |
| Defendants. | : *Oral Argument Requested* |

## PRELIMINARY STATEMENT

In response to Plaintiff's Complaint, which alleges violations of the Lanham

Act, 15 U.S.C. §§1114, 1125, and violations of New York statutory and common law,

Defendants allege that this Court does not have personal jurisdiction over them and

that this district is not a proper venue.  However, Plaintiff's Complaint alleges that it

suffered injury in this judicial district, and that Defendants have subjected

themselves, through their business activities, to jurisdiction in New York.  The

Declarations of Elizabeth Needle and Ariel Peikes, Esq. are also submitted in support

of Plaintiff's Opposition.

Plaintiff Knoll, Inc. ("Knoll") is a leading design and manufacturing firm, which

markets branded furniture and sells its products throughout the United States,

including in New York State and New York City. (Complaint ¶4).  Knoll has a

significant presence in New York City: its designers are in Manhattan, as are several

of its top executives, its busiest showroom is located in Manhattan, and Knoll has

1

more than seventy (70) employees in New York City. (Declaration of Elizabeth Needle ¶¶4-8).

Defendant Moderno, Inc. d/b/a Regency Shop, through its president, Defendant Mike Saxena, is a low-price retailer of knock-offs in the same industry. Defendants, through their website, http://www.regencyshop.com, have in the past and continue to offer for sale and to sell furniture, including copies of Knoll's branded furniture, which are federally registered trademarks, to New Yorkers. (Complaint ¶¶8-10; Mike Saxena Decl. ¶¶12 and 24[1]; Defendants' Brief at p.18). Defendants also ship and deliver their furniture products into New York. (Saxena Decl. ¶24).

Defendants' solicitation of business in New York through their website, their sale of furniture products to New York consumers such as the New York Fire Department (FDNY),[2] and their delivery of products into New York make jurisdiction over them in this Court appropriate. Defendants have infringed Knoll's federally registered trademarks here and therefore caused Knoll to suffer injury in New York. Accordingly, this Court has jurisdiction over Defendants based upon the New York State long-arm statute and because jurisdiction in this Court is consistent with the Due Process requirements of the U.S Constitution.

If there is any doubt on the issues of jurisdiction and venue, Plaintiff requests a stay of Defendants' motion to enable it to conduct jurisdictional and venue discovery.

---

[1] Defendant Saxena's Declaration was attached to Defendants' brief in support of their motion to dismiss. Annexed to Defendant Saxena's Declaration were hundreds of exhibits which are irrelevant to the motion. Accordingly, Knoll will not address these exhibits at this time.

[2] See Declaration of Attorney Peikes, Exhibit A (attached hereto). Defendants claim that the FDNY is one of their "satisfied customers."

## STATEMENT OF MATERIAL FACTS

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing of jurisdiction. <u>Baron Philippe De Rothschild, S.A. v. Societte Civile Chateau Lafite Rothschild</u>, 923 F.Supp. 433, 436 (SDNY 1996).  The court must construe "the pleadings and affidavits in the light most favorable to the plaintiffs, resolving all doubts in [the plaintiffs'] favor." <u>Chloe v. Queen Bee of Beverly Hills</u>, 616 F.3d 158, 161 (2nd Cir. 2010).  With those standards in mind, the following facts are relevant to Defendants' motion to dismiss:

### I.   FACTS RELEVANT TO KNOLL[3]

1)      Knoll is a Delaware corporation which maintains an important and significant place of business in this federal judicial district, at 76 Ninth Avenue, New York, NY 10021.  Knoll's furniture designers, several of its top executives, and one of its largest and busiest showrooms are all located in New York. (Complaint at ¶3; Needle Decl. ¶¶4-8).  Knoll has more than seventy (70) employees in New York City. (<u>Id</u>.).

2)      Knoll is a well-known manufacturer of furniture and is the owner of all right, title and interest in and to certain designs of the famous architect Ludwig Mies van der Rohe: the Barcelona Chair, Barcelona Stool, Barcelona Couch, Barcelona Table, and the Flat Brno Chair (hereinafter collectively the "Barcelona Collection").

---

[3] Defendants attached 83 pages of exhibits to their memorandum of law.  These exhibits are unsupported by any declaration and are largely irrelevant to the issues of personal jurisdiction and venue.

3)    Knoll is the owner of numerous federally registered trademarks for the designs that make up the Barcelona Collection: Barcelona Chair (trademark registration No. 2,893,025); Barcelona Stool (No. 2,894,977); Barcelona Couch (No. 2,894,980); Barcelona Table (No. 2,894,979); and Flat Brno Chair (No. 2,894,978).  The trademark BARCELONA (No. 772,313) is also registered. These trademarks have been registered for several years and are incontestable. (Complaint ¶¶28 - 33).[4]

4)    Knoll has for many years sold its Barcelona Collection throughout the United States and internationally, and has issued promotional material relating to the Barcelona Collection for many years. (Complaint ¶26).

5)    More than forty (40) of Knoll's furniture designs are exhibited in the permanent Design Collection of the Museum of Modern Art (MOMA), located in New York, NY. Some of these designs have been a part of the MOMA's permanent collection since the 1950s.  MOMA also houses the Ludwig Mies van der Rohe archives (Needle Decl. ¶10).

6)    Knoll's New York City showroom, at its New York City office, is one of its busiest. (Id. ¶7)  In addition, there are at least twenty Knoll showrooms and/or outlet and retail stores throughout New York State where consumers can buy items from Knoll's Barcelona Collection and other Knoll products. (Id. ¶9).

---

[4] Defendants' brief contains an irrelevant discussion of Ludwig Mies van der Rohe. This discussion contains factual misrepresentations; however, Knoll will not address them at this time as they have no bearing on this motion.  Likewise, at this stage, Knoll will not address other aspects of Defendants' brief irrelevant to this motion, such as likelihood of confusion, disclaimers, and functionality.

7)   Knoll has suffered and continues to suffer injury in this judicial district based on Defendants' violation of its trademark rights. (Complaint ¶¶35, 36).[5]


## II. FACTS RELAVENT TO DEFENDANTS

1)  Defendants Moderno, Inc. ("Moderno") and its principal, Mike Saxena ("Saxena"), own and operate the website www.regencyshop.com ("the website"). From their website, Defendants advertise, promote and offer for sale furniture products, including furniture in the form of the designs that are the subject of Knoll's trademark registrations – the products that make up the Barcelona Collection. (Complaint ¶35; Saxena Decl. ¶¶5 and 12).

2)   Defendants' website is accessible anywhere in the world, wherever the Internet can be accessed, including in New York. (Saxena Decl. ¶22).  Through Defendants' website, a consumer in Manhattan can order product, pay for it (by credit card or by other e-payment method), and arrange for shipment to the location specified by the consumer. (Id. at ¶24).  Through Defendants' website, New York consumers have, and can still, buy furniture products and arrange for those products to be delivered to them in New York, including the furniture products in the form of designs that are the subject of Knoll's registered trademarks. (Complaint ¶¶35-36; Saxena Decl., ¶¶12, 22 and 24) (A printout of representative pages from the website is attached to the Complaint as Exhibit G).  In addition, the Defendants' website lists a toll-free (866) telephone number for sales, which consumers,

---

[5] Knoll owns federal trademark registrations for the configurations of the designs at issue and has the right to take action to protect its trademark rights, particularly since the trademarks are presumptively valid. 15 U.S.C. § 1115(a). Accordingly, any suggestion that Knoll acted in bad faith is without merit.

including New Yorkers, can use to call the Defendants free of charge. (Complaint, Exhibit G).

3)     Defendants admit that they have made "some sales" of their copies of items in Knoll's Barcelona Collection through their website to New York consumers. (Defendants' Brief, p.18).

4)     Defendants have sold other furniture products to New York consumers, such as the FDNY, and delivered them into New York. (See Complaint ¶¶34-36; Decl. of Peikes, Exhibit A). Defendants' website boasts that the FDNY is one of its "satisfied customers." (Decl. of Peikes, Exhibit A).

5)     Defendants continue to offer their Barcelona Collection copies for sale and delivery into New York. (Saxena Decl. ¶12; Complaint ¶36).

## LEGAL ARGUMENT

### POINT I
### PERSONAL JURISDICTION EXISTS PURSUANT TO THE NEW YORK LONG-ARM STATUTE

The analysis of whether a New York court can exercise jurisdiction over a nondomiciliary defendant involves a two-step analysis: (1) whether jurisdiction is conferred by the New York long-arm statute, and (2) whether such jurisdiction comports with the Due Process Clause of the United States Constitution. Chloe, 616 F.3d at 164.

New York's Long-Arm Statute, C.P.L.R. § 302(a), provides in relevant part, that:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

When jurisdiction exists over a corporation, Section 302(a) confers jurisdiction over the individual corporate officers who supervise and control the infringing activity. Chloe, 616 F.3d at 164. Knoll alleges in its Complaint that the individual defendant, Mike Saxena, "is a principal of Defendant Moderno, Inc. and is otherwise responsible for the infringing activities of said corporate Defendant." (Complaint ¶8). This allegation is not contested in the Saxena Declaration; in fact, Defendant Saxena's declaration does not even state what his role is in the Defendant corporation. Therefore, if jurisdiction exists over the corporate defendant, Moderno, it also exists over Defendant Saxena.

## A. JURISDICTION OVER THE DEFENDANTS EXISTS PURSUANT TO NY CPLR § 302(a)(1)

In a recent and highly relevant decision by the Second Circuit, Chloe,[6] supra, the Court declared that its opinion involves "an update to the Court's jurisprudence on personal jurisdiction in the age of internet commerce." Id. at 166. The Second Circuit explained that CPLR § 302(a)(1) provides for jurisdiction over a defendant even when the defendant has only "minimal contacts" with New York but contracts to sell goods or services in the state. The "shipment of goods into the State or the performance of services in the State" is "an act by which a nondomiciliary avails itself of the privilege of conducting activities in the State." Id. at 170. Even proof of just "one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Id.

Plaintiff Knoll has met the requirements of § 302(a)(1) to establish jurisdiction over the Defendants by its allegations in its Complaint that the Defendants violated Knoll's trademark rights when they sold, in this judicial district and in this State, infringing replicas of Knoll's Barcelona Collection designs. (Complaint ¶¶9, 10, 35 and 36). Thus there is a substantial relationship between Knoll's trademark claims against Defendants and Defendants' alleged transactions in New York.

Notably, Defendants admit that they sold copies of Knoll's designs to New York consumers and delivered those copies into New York; Defendants did not

---

[6] No jurisdictional discussion regarding internet-based sales is complete without reference to Chloe. Defendants have not bothered to do so.

simply post the infringing items on their website.  In their brief, Defendants state that:
"Knoll's argument that there is personal jurisdiction under New York's long arm
statute will be based almost entirely on the fact that *some sales of IBIZA items were
made via the Regencyshop.com website to New Yorkers.*"[7] (Emphasis
supplied)(Defendants' Brief, p.18).  Likewise, in the Declaration of Defendant
Saxena, Mr. Saxena admits that the Regencyshop.com website enables consumers
to arrange for delivery of Defendants' products "to such location as the buyer
specifies." (Saxena Decl. ¶24).

     In Chloe, the Second Circuit ruled that a California defendant was subject to
personal jurisdiction in New York based upon his single act of "shipping an item [from
California] into New York, combined with his employer's extensive business activity"
in New York. Chloe, 616 F.3d at 165.  Jurisdiction was also appropriate over the
defendant business because it operated two websites which offered copies of the
plaintiff's bags for sale to New York consumers, permitted New York consumers to
purchase those bags, and facilitated the shipment of bags into New York from
Beverly Hills. Id. at 166.   The corporate defendant's website permitted customers to
view the defendant's handbags and to "Click here...to purchase this item." The site
then provided a telephone number that customers could call to make credit card
payments and an interface through which customers could pay for their orders online.
Id. at 162.[8]    The Circuit Court highlighted that the defendant had "sold other
designer merchandise to New York consumers," and, thus, "these additional contacts

---

[7] Ibiza is the name used by Defendants for their infringing copies of items from
Knoll's Barcelona Collection. (Complaint, Exhibit G).

[8] As noted, Defendants' website is a "click" to purchase website and offers a
telephone number for customers to call. (Complaint, Exhibit G).

show that the shipment of a counterfeit [bag of Plaintiff's] was not...a 'one off transaction' but rather a part of a larger business plan purposefully directed at New York consumers." Id.[9]  These facts established minimum contacts with New York pursuant to the State's long-arm statute.

As in Chloe, Defendants have sold products through a website and shipped those products from California to New York, including products that Plaintiff alleges violate its trademark rights.  Also, identical to the facts in Chloe, Defendants operate an interactive website from which consumers can view products, order them, pay for them online and arrange for shipment to New York (Saxena Decl. ¶¶22 and 24). Also similar to the business defendant in Chloe, Defendants have advertised, sold and shipped other products to New York consumers and noted a New York entity as a "satisfied customer," all of which demonstrates that they have a "larger business plan purposely directed at New York consumers."  Therefore, construing the Complaint's pleadings and Defendants' admissions in the light most favorable to Plaintiff (See Chloe, 616 F.3d at 161), Defendants have shipped the allegedly infringing products and other products into New York, and jurisdiction exists here.

As in Chloe, in Mattel, Inc. v. Adventure Apparel, 2001 U.S. Dist. LEXIS 3179 (SDNY 2001), the district court found that jurisdiction existed over the defendant, an Arizona company with a website maintained in California, because the defendant made a single internet-based sale into New York.  The district court explained that the defendant's single sale into New York satisfied N.Y. C.P.L.R. §302(a)(1) because

---

[9]  The targeting of New York customers is also shown by Defendants' reference on their website to the New York City Fire Department as a "satisfied customer." (Decl. of Peikes, Exhibit A).

the sale "not only involved the exchange of payment and shipping information but, moreover, was a commercial transaction that was actually consummated on line. These activities were sufficient to bring [the defendant] into the category of a defendant 'transacting any business,' via the internet, in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1)." Id. (Internal quotations omitted).

As in Chloe and Mattel, Defendants' sale of products to New Yorkers through their interactive website shows that Defendants have been "transacting business, via the internet, within the meaning of N.Y. C.P.L.R. § 302(a)(1)" and that jurisdiction exists.  Although Defendants allege that their website is operated in California, this fact is not relevant because the decisions in Chloe and Mattel establish that an out-of-forum defendant who makes even one sale to a New York consumer through an interactive website is subject to jurisdiction in New York.  This is especially true when the sale involved products that allegedly infringed the plaintiff's intellectual property rights. See Baron Philippe de Rothschild S.A., supra, at 436 (jurisdiction existed over the defendants because the defendants were "shipping the allegedly infringing goods to New York," and those shipments were "substantially related" to the plaintiffs' trademark infringement claims).

In the instant case, Defendants have admitted selling their infringing Ibiza furniture products to New Yorkers.  These are the very same products that Knoll has alleged infringe its trademark rights. Therefore, the above-referenced decisions, Chloe, Mattel and Baron Philippe de Rothschild S.A. all demonstrate that this Court has jurisdiction over Defendants.

11

## B. JURISDICTION EXISTS PURSUANT TO NY CPLR § 302(a)(2)

CPLR § 302(a)(2) confers jurisdiction over an entity that commits a tortious act within the state, where the cause of action arises from that tortious act. Citigroup v. Citi Holding Company, 97 F.Supp 2d. 549, 566-567 (SDNY 2000). In this case, the Complaint alleges trademark infringement and passing off, and those acts occur "where the attempted passing off of an infringing mark occurs." Id. When trademark infringement is alleged, there is no minimum threshold of activity required so long as the infringement arises from the allegedly activity in New York. Id. Even offering one copy of an infringing work for sale to a New York consumer constitutes the "commission of a tortious act within the state sufficient to imbue the Court with personal jurisdiction over the infringers." Id.; See also German Educational Television Network, Ltd. v. Oregon Public Broadcasting Co., 569 F.Supp.1529, 1532 (SDNY 1983) (when trademark infringement occurs, "the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs").

In Citigroup, supra, the plaintiff alleged that its trademark rights were infringed when the defendant sent "direct mailings to New York residents directed at soliciting their business and displaying the allegedly infringing marks." 97 F.Supp.2d., at 566-67. The district court explained that "[t]he attempt to pass off these marks, which is [the] allegedly tortious conduct, occurred within New York because that is where the marks were received and viewed by the direct mailing recipients." Id. at 567. Because the alleged infringing conduct occurred in New York, jurisdiction existed over a defendant pursuant to § 302(a)(2).

12

In the instant case, Defendants admit that they have shipped the alleged infringing furniture products into New York (Defendants' Brief, p.18), and their website touts the FDNY as a satisfied customer. (Decl. of Peikes, Exhibit A). Therefore, the Defendants' infringing products have been and continue to be seen by consumers in New York, causing trademark injury to Knoll in New York.

C. JURISDICTION OVER DEFENDANTS ALSO EXISTS PURSUANT TO § 302(a)(3)

CPLR § 302(a)(3) provides yet a third basis for exercising specific jurisdiction over Defendants: where the cause of action arises out of a tort committed outside of New York but the tort causes harm within New York, the defendant expected or should have reasonably expected the act to have consequences in the state, and the defendant derives substantial revenue from interstate commerce. Citigroup, supra, at 567-568.  Injury within the state includes harm to a business in the New York market in the form of lost sales or customers. See American Network, Inc. v. Access America/Connect Atlanta, 975 F.Supp. 494, 497 (SDNY 1997).  This requirement is satisfied by Plaintiff's claim that customers are likely confused or deceived when they view and interact with Defendants' website. (Complaint ¶41); See Citigroup at 568 (Citigroup properly alleged injury in New York by its claim that its actual and potential customers in New York were confused or deceived when they viewed the defendant's websites).

It was reasonably foreseeable to Defendants that copying Knoll's designs, offering them for sale and selling their copies would cause injury to Knoll in many

13

jurisdictions, including in New York.  New York is the design capital of the world, and Knoll has a significant presence here. (Needle Decl. ¶¶4-10).

Furthermore, Defendants admit that they derive substantial revenue from interstate commerce and offer to sell their replica products to consumers in many states, including New York. (Saxena Decl. ¶¶22 and 24).  Defendants' website enables consumers to order for delivery, furniture products "to a location specified by the consumer," and Defendants ship their product from California into other jurisdictions. (Saxena Decl. ¶24).  Thus, the requirements of Defendants' expectations and substantial revenue have been met.

D. DEFENDANTS' RELIANCE ON American Buddha IS MISPLACED

Defendants argue that the New York Court of Appeals' decision in Penguin Group (USA) Inc. v. American Buddha, 16 N.Y.3d. 295 (NY 2011), supports their argument that there is no jurisdiction over them in New York.[10]  However, that decision actually supports Knoll's position because jurisdiction over the defendant in American Buddha was found to be consistent with NY CPLR 302(a), even though the defendant had not sold or shipped any copies of the plaintiff's copyrighted material to New Yorkers.  The New York Court of Appeals held that: "[t]he location of the infringement in online cases is of little import inasmuch as the primary aim of the infringer is to make the works available to anyone with access to an Internet connection, including computer users in New York." Id. at 306.

---

[10] Defendants' extensive discussion of American Buddha does not include any reference to the binding decision in Chloe.

14

In American Buddha, the sole issue decided by the Court was whether jurisdiction existed over the defendant pursuant to NY CPLR § 302(a)(3), based upon the defendant's electronic copying and uploading of the plaintiff's work in Oregon or Arizona and making the copyrighted work available for viewing on the internet anywhere the internet could be accessed. Id. at 299. Even though the defendant had uploaded the works in Oregon or Arizona, the Court found that the defendant's goal was to make the works available to readers everywhere, including in New York, and that jurisdiction over the defendant was appropriate.

In the instant case, Defendants' contacts with New York and New Yorkers are far more significant and jurisdiction more obvious than in American Buddha. Through their website, Defendants advertised products to New Yorkers and transacted sales to New Yorkers. In particular, Defendants advertised and sold their infringing products to New Yorkers. Further, Defendants' website allowed consumers to "arrange for shipment to a location specified by the consumer." (Saxena Decl. ¶24). The Defendants' website even boasts that the New York City Fire Department is one of its "satisfied customers" (Decl. of Peikes, Exhibit A), so Defendants have delivered their products into New York   Moreover, Defendants have continuously and purposefully availed themselves of this forum by selling their infringing products, as well as other furniture products, to New Yorkers and delivering those products in New York. (Saxena Decl. ¶¶12, 24; Complaint ¶36).

Trademark injury occurs, both to consumers and to the trademark owner, "where the attempted passing off of [the] infringing mark occurs." Citigroup, supra, at 566-567. To the extent that the Defendants rely on American Buddha to argue that

15

this case should have been filed in Delaware, where Knoll is incorporated, or in Pennsylvania, as the 'situs' of injury, this argument is contrary to the principles of trademark law and the New York Long-Arm Statute. New York consumers suffer injury *within the State* when the alleged trademark infringer sells and ships its infringing product to New York consumers. In Chloe, the Second Circuit determined that just one sale of the alleged infringing product to a New York consumer conferred jurisdiction over the defendant. See also Mattel, supra. In the instant case, Defendants admit to selling and shipping the alleged infringing products to New Yorkers consumers, and the Complaint states that Defendants' actions were intended to "cause confusion and mistake" among consumers - to "mislead the architects, furniture trade, and the purchasing public." (Complaint ¶¶41, 42, 46 and 47). These are injuries to consumers recognized by the Lanham Act at 15 U.S.C. ¶¶1114 and1125(a), and by the New York Long-Arm State, *i.e.* Chloe and Mattel.

### POINT II
### JURISDICTION OVER THE DEFENDANTS
### DOES NOT VIOLATE DUE PROCESS

There are two components to the due process analysis to determine whether a defendant is subject to the court's jurisdiction for commercial activity involving New York: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry. Chloe, 616 F.3d at 171.

### (A) MINIMUM CONTACTS EXIST WITH NEW YORK STATE

Where the claims arise out of, or relate to the defendant's contacts with the forum, minimum contacts exist where the defendant purposely availed itself of the

privilege of doing business in the forum and could foresee being haled into court

there. Bank Brussels Lambert v. Fiddler Gonzalez, 305 F.3d 120,127 (2nd Cir. 2002).

In Chloe, the Second Circuit found that jurisdiction over a shipper of a single

counterfeit bag comported with constitutional due process requirements for the same

reasons that jurisdiction conformed to New York's long-arm statute. Chloe, 616 F.3d

at 171. The Court explained that "both New York's long-arm statute and the Due

Process Clause require that Queen Bee's contacts with New York have some

connection to Chloe's trademark infringement claim." Id. at 166. The Second Circuit

further explained that:

> by offering bags for sale to New York consumers on the Queen Bee website
> and by selling bags--including at least one counterfeit Chloe bag--to New
> York consumers, [defendant] has purposefully availed himself of the
> privilege of conducting activities within the forum State, thus invoking the
> benefits and protections of its laws.   In other words, jurisdiction is
> appropriate in New York because Queen Bee has developed and served a
> market for its products there. In actually sending items to New York, there
> can be no doubt that [defendant's] conduct was purposefully directed toward
> the forum State.

Id. at 171 (internal quotations and citations omitted).

In the instant case, Defendants have conceded that they sold and shipped their

furniture products to New York consumers. (Saxena Decl. ¶¶12, 22-24; Defendants'

Brief, p.18; Complaint ¶¶9, 10 and 34-36).  Their website even boasts that the New

York City Fire Department is one of their "satisfied customers." (Decl. of Peikes,

Exhibit A).  Therefore, Defendants have purposefully availed themselves of "the

privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws," and jurisdiction is appropriate in New York because

Defendants have developed and served a market for their products here.  Moreover,

"[i]n actually sending items to New York, there can be no doubt that" Defendants'
"conduct was purposefully directed toward the forum State." See Chloe, 616 F.3d. at
171.

   (B) JURISDICTION OVER THE DEFENDANTS IS 'REASONABLE'

     In Chloe, the Second Circuit explained that there are five factors to be
considered when determining the reasonableness of a forum: (1) the burden on the
defendant, (2) the interests of the forum State, (3) the plaintiff's interest in obtaining
relief, (4) the interstate judicial system's interest in obtaining the most efficient
resolutions of controversies, and (5) the shared interests of the States in furthering
fundamental substantive policies. Id. at 173.

     The Court found that the balance of the factors favored jurisdiction over the
California defendant.   The Court noted that although "we acknowledge that there will
be some burden on [the defendant] if he must travel to New York for trial[,]" [t]he
inconvenience, however, *cuts both ways* since all of [plaintiff's] witnesses would have
to travel to California if the case were brought there." Id. (Emphasis supplied); Bank
Brussels, supra, 305 F.3d at 129-130 ("Even if forcing the defendant to litigate in a
forum relatively distant from its home base were found to be a burden, the argument
would provide defendant only weak support, if any, because *the conveniences of
modern communication and transportation ease what would have been a serious
burden* only a few decades ago."). (Emphasis supplied).

     This first factor, "the burden on the defendant," benefits Knoll because
Defendants' "burden" of defending themselves in New York is not significant since
the Defendants have purposely availed themselves of doing business in New York

18

and since "modern communication and transportation" alleviate what once might have been a burden on the Defendants. See Bank Brussells, supra. Furthermore, Knoll's potential witnesses are located in New York or can travel to New York easily. (Needle Decl. ¶11), and if this case were re-filed in California, Knoll's witnesses would have to travel across the country and would be equally inconvenienced. See Chloe, 616 F.3d. at 173. Therefore, Defendants cannot claim that inconvenience deprives this Court of jurisdiction over them.

Moreover, in Chloe, the Second Circuit held that since the plaintiff had shown that defendant had minimum contacts with the forum state, the defendant's "generalized complaints of inconvenience from having to defend himself from suit in New York do not add up to a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (Internal quotations omitted) Id. at 173. In the instant case, Defendants have offered no more than "generalized complaints of inconvenience", including that Defendant Moderno has set aside only "a very small budget for this litigation and any material increase in cost would force us to give up this fight..." (Saxena Decl. ¶26). Notably, Defendants have not produced any evidence that they are financially unable to defend themselves in this judicial district. Quite the contrary, Defendants have been able to retain counsel to advise them to place these products back onto their website after they removed them based on Knoll's cease and desist letter (Saxena Decl. ¶12), and to file, on their motion to dismiss, a twenty-three page brief and nearly 350 pages of exhibits. As in Chloe, such generalized complaints of inconvenience do not amount to a "compelling case" that jurisdiction or venue in New York is improper.

The second factor also favors Knoll. New York has a "manifest interest in providing effective means of redress for its residents." Chloe, 616 F.3d at 173. Knoll maintains offices in New York where it employs its designers, several of its top executives, and maintains a large and busy showroom. (Needle Decl. ¶¶4-8). Knoll therefore conducts significant business in New York, the design capital of the world. Moreover, Knoll has alleged that New York consumers have likely been injured by Defendants' trademark infringement – that consumers have been and are likely to be confused by Defendants' copying of Knoll's trademark-protected designs. (Complaint ¶¶41, 42, 46 and 47). This New York based Court has an interest in protecting New York consumers and ensuring that consumers are not confused by Defendants' copies of Knoll's furniture designs.

The third and fourth factors also favor Knoll because Knoll has a strong interest in enforcing its trademark rights and dismissal of the case would delay Knoll's opportunity to secure injunctive relief. In particular, Defendants admit that they have sold and continue to sell copies of Knoll's trademark-protected designs, (Defendant's Brief, p.18; Saxena Decl. ¶12), at prices about 30% of Plaintiff's prices. (Complaint, Exhibit G – See "Retail" price compared to Defendants' "Sale" price). The judicial system has an interest in obtaining the most efficient resolution of controversies, and that interest is best furthered by this case progressing expediently. Likewise, the judicial system has an interest in this Court deciding whether New York consumers are likely to be injured by Defendants' infringement of Knoll's trademarks.

Consequently, the balance of the 'reasonableness' factors show that jurisdiction over Defendants is appropriate in this Court.

POINT III
THE SOUTHERN DISTRICT OF NEW YORK IS A PROPER VENUE

In a trademark infringement action, venue is appropriate in every jurisdiction where an alleged infringement occurred. Baron Philippe De Rothschild, S.A., supra, at 437; Jaguar Cars, Ltd. v. National Football League, 886 F.Supp. 335, 337-338 (SDNY 1995).  As discussed above, multiple shipments of the alleged infringing products were shipped by Defendants into New York.  Venue is therefore proper in this district.

Defendants incorrectly argue that venue is improper pursuant to 28 U.S.C. § 1391(b) and (c), which state that:

(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) **a judicial district where any defendant resides**, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

(c) For purposes of venue under this chapter [28 USCS §§ 1391 et seq.], a defendant that is a **corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.**

(Emphasis supplied).

Since Defendant Moderno has purposefully availed itself of the benefits of doing business in New York, by selling and delivering its furniture products to New York consumers, and references New York as a location of a satisfied customer, jurisdiction exists over Moderno.  Therefore, pursuant to 28 U.S.C. § 1391(c), Defendant Moderno is "deemed to reside" in New York.  Consequently, jurisdiction over Moderno is proper and this Court is an appropriate venue.

In addition, as explained above, at page 6 herein, whenever there is jurisdiction over a corporate defendant, NY CPLR § 302(a) also confers jurisdiction over individual corporate officers who supervised and controlled the alleged infringing activity. Chloe, at 164.  Therefore, because Knoll alleges in its Complaint that Defendant Saxena "is a principal of Defendant Moderno, Inc. and is otherwise responsible for the infringing activities of said corporate Defendant" (Complaint ¶8), an allegation uncontested by Defendants, there is jurisdiction and venue is also proper with respect to Defendant Saxena.

In fact, New York is the most appropriate jurisdiction to adjudicate Knoll's trademark claims.  New York is the design capital of the world, and Knoll's designs are especially known to the New York design community and consumers interested in design because of Knoll's significant presence in New York: Knoll's designers are all in New York; several of its top executives are in New York; Knoll maintains a large and busy showroom here, more than forty (40) of Knoll's furniture designs are in MoMA's permanent furniture collection and Mies van der Rohe's archives are at MoMA. (Needle Decl. ¶¶3-10; Complaint ¶25).[11]  Therefore, this forum is especially well-suited to adjudicate Knoll's trademark infringement claims and to evaluate the damage caused to Knoll by Defendants' conduct.

Curiously, Defendants argue that Delaware or Pennsylvania would be more appropriate venues for this case. (Defendants' Brief, p.22-23).  However, if this Court does not find that jurisdiction exists here, and Knoll then refiles this case in Delaware

---

[11] Whether Knoll has previously litigated claims in this district is irrelevant to this analysis.  In any event, Knoll has previously engaged in significant litigation, including summary judgment motions, in this district.

or in Pennsylvania, it is difficult to see how this would benefit Defendants, Knoll, or the federal courts. All the parties involved would be inconvenienced and Defendants' alleged concerns regarding the expense of litigating this matter in a jurisdiction far from California would not be addressed.

For the purposes of clarity, Plaintiff highlights that Defendants have not made a motion to transfer this action to California pursuant to 28 U.S.C. §1404(a). Plaintiff is thus not obligated to argue against a motion to transfer to California or to any other forum that Defendants have not made. Should Defendants make a motion to transfer, Knoll will strongly resist such transfer.

### POINT IV
### IF THE COURT HAS ANY DOUBT THAT JURISDICTION AND VENUE IN THE SOUTHERN DISTRICT OF NEW YORK ARE PROPER, PLAINTIFF REQUESTS LEAVE TO TAKE JURISDICTIONAL AND VENUE DISCOVERY

Knoll has argued herein that jurisdiction and venue over Defendants in this District is proper. However, if the Court does not so find, Knoll requests leave to take discovery on the jurisdictional and venue issues raised by Defendants.

The Second Circuit has stated that a court "should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the exercise of jurisdiction." A.P.W.U. v. Potter, 343 F.3d 619, 627 (2nd Cir. 2003). Therefore, given that this case is in its very early stages, and Plaintiff has not yet conducted any discovery relating to Defendants' sale and delivery of products into New York, should the Court not find that Plaintiff has made a prima facie showing of jurisdiction pursuant to CPRL § 302(a) or that venue is proper, the Court should allow Plaintiff to undertake jurisdictional and venue discovery.

23

In H.L. Moore Drug Exchange, Inc. v. Smith Kline & French Labs., 384 F.2d 97

(2nd Cir. 1967), the Second Circuit explained that: "When a defendant moves to

dismiss for lack of jurisdiction [over the person], either party should be permitted to

take depositions on the issues of fact raised by the motion." To be permitted to take

such discovery, a plaintiff need only have made a "sufficient start" towards showing

that jurisdiction exists and "shown its position to be non-frivolous." BHP Trading (UK)

Limited v. Deep Sea International Shipping Company, 1991 U.S. Dist. LEXIS 13220

(SDNY 1991). Plaintiff has made a "sufficient start," based upon its Complaint and

Defendants' admissions.

Furthermore, in Winston & Strawn v. Dong Won Securities Co., 2002 U.S.

Dist. LEXIS 20952 (SDNY 2002), the district court denied the defendant's motion to

dismiss for lack of jurisdiction and held that "[p]re-motion discovery should be

permitted where the facts necessary to establish personal jurisdiction and propriety of

venue lie exclusively within the defendant's knowledge." Id. The plaintiff requested

that the court allow it to take jurisdictional discovery to establish the necessary

evidence of "how many contacts Dong Won had with [plaintiff's] New York office and

what the subject matter of those discussions were," because the plaintiff law firm had

turned over all of its records to the defendant upon the termination of its

representation. The court determined that discovery would lead to "a more accurate

judgment" on the issue of whether Dong Won was doing business in New York "than

one made solely on the basis of affidavits in response to the motion." Id. at *16.

Accordingly, since Knoll has not had access to Defendants' sales and shipment

records and documents regarding Defendants' financial ability to defend themselves

in this Court[12] – and these facts are "exclusively within the [Defendants'] knowledge," (See Winston & Strawn, supra) – discovery is entirely appropriate.  If there is any doubt on the question of jurisdiction and venue over Defendants on the present record, the results of discovery would enable the Court to make a better informed decision on whether jurisdiction exists over Defendants in New York.

The proper scope of jurisdictional and venue discovery are generally the facts alleged by Defendants in their brief and supporting affidavits.  Specifically, Plaintiff would request documents and other discovery on at least the following topics:

1. Sales inquiries by potential consumers in New York;

2. Sales of all products and all infringing products to New York consumers by the Defendants;

3. Marketing information sent to New York customers, including by email;

4. Financial transactions with New York consumers;

5. Shipments to New York consumers;

6. Warranty and follow-up information sent to New York;

7. Defendants' total business in dollars and percentage conducted in New York;

8. Trips by Defendant Moderno's officers and sales personnel to New York; and

9. The number of visitors from New York to Defendants' website.

---

[12] Defendants claim that it would be financially burdensome for them to litigate in New York without providing any support for their claim.  Knoll should be permitted to probe this claim.

## CONCLUSION

For the reasons provided herein, jurisdiction exists over Defendants in this judicial district and venue is proper.  However, should the Court find the present record to be inadequate to show jurisdiction over Defendants, or that venue in this judicial district is proper, Plaintiff requests leave to take jurisdictional and venue discovery.

Oral argument is requested.

Respectfully submitted,
GOTTLIEB, RACKMAN & REISMAN, P.C.

Dated: September 6, 2011        By: _____
New York, New York                  George Gottlieb (GG-5761)
                                    Marc P. Misthal (MM-6636)
                                    Ariel S. Peikes (AP-9157)

26