UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

KNOLL, INC.,

                      Plaintiff,          No. 11 cv. 0488 (AKH)
                                                     ECF CASE

    -against-

MODERNO, INC. AND URBAN MOD, INC.
d/b/a REGENCY SHOP, AND MIKE SAXENA

                      Defendants.
───────────────────────────────────────────────


REPLY DECLARATION OF SALEM M. KATSH IN SUPPORT OF
MOTION TO WITHDRAW AS COUNSEL OF RECORD

      SALEM M. KATSH, under penalty of perjury, duly declares and says:

      1.    This declaration is made in reply to Knoll's opposition to the motion of defendants' counsel for an order, pursuant to Local Rule 1.4, granting leave of Court to withdraw as counsel of record.

      2.    This declaration seeks to prevent defendants from being prejudiced by their exercising of their right to replace counsel and to be represented by counsel of their choice.

      3.    *K&A Fulfilled Its Ethical Responsibilities.*  First, in view of the statements made by Knoll in its opposition to the instant motion, I wish to make clear that both Katsh & Associates LLC ("K&A") and co-counsel Robert Tilewick, Esq. have provided thorough advice to defendants with respect to the ramifications of discharging K&A, as well as the withdrawal of both K&A and Mr. Tilewick as counsel of record.  It would be inappropriate to set forth herein

the substance of attorney communications with Mr. Saxena, but if desired by the Court we will provide this information under seal.

4. Both K&A and Mr. Tilewick also stand ready, as is our ethical duty, to assist new counsel in getting quickly up to speed in the case.

5. *A Stay of 60 Days Is Appropriate.*  The 60-day stay requested would be the first extension of the discovery dates set forth in the case management order.

6. As shown by the facts set forth below, defendants are in full compliance with their discovery obligations. While Knoll argues that, on April 20, 2012, it provided defendants with a document setting forth a list of questions about, and alleged deficiencies in, defendants' document production, Knoll's reference to this document is a pretense.  The fact is that the major delays in discovery in this case have been occasioned by Knoll.

7. Thus, it was Knoll that initiated a 5-week suspension of discovery, from March 12 until April 20, leaving only 10 days for the completion of fact discovery (the case management order setting April 30th as the deadline for such discovery).[1]

8. It was Knoll that suggested that no depositions be taken until document production has been completed.  As a result, with only ten days left until the deadline for fact discovery to be completed, not a single deposition has been taken in this case.

---

1. Specifically, on March 12, 2012, after the hearing on defendants' motion for judgment on the pleadings, Mr. Gottlieb and I discussed the possibility of framing the "functionality issue" for final adjudication by way of a summary judgment motion.  A number of scenarios were discussed and we also discussed the possibility of settlement.  Mr. Gottlieb stated that he needed to talk to Knoll about the settlement terms and he suggested that discovery be put on hold while these various issues were further discussed.  I agreed to his suggestion and, as I understand the facts, Knoll did not seek to resume discovery until the settlement talks proved unsuccessful on or about April 20, 2012.

9. And it is Knoll that has withheld production of thousands of documents based on a confidentiality objection. Defendants have produced *all* documents responsive to Knoll's Rule 34 document request, irrespective of whether the documents were to be treated by Knoll as confidential. See my letter to Knoll's counsel of February 5th, Exhibit A hereto.

10. Further, although the parties are very close to agreement, they have not yet filed a motion for entry of a protective order. Knoll's refusal to produce the thousands of documents it is withholding is based on its position that they are confidential. Defendants, as is usual in these kinds of litigations, have offered to hold the documents on an "outside counsel eyes only" basis, pending entry of the protective order, but Knoll has refused.

11. What the facts therefore show is that Knoll's allegations about defendants purportedly causing delays in discovery are disingenuous. Even before Knoll initiated the 5-week suspension of discovery while settlement talks took place, it had to know that, with an April 30th deadline, there was no way it was going to complete the production of thousands of documents (even assuming a protective order was entered); and there was no way the parties were going to commence and complete deposition programs. A *fortiori*, when Mr. Gottlieb on March 12 suggested that discovery be suspended pending settlement talks, it had to be clear to Knoll that the April 30th deadline could not be met. And this of course became a certainty when that suspension continued until April 20th with the full agreement of Knoll.

12. In sum, what is clear is that Knoll's counsel have for many weeks understood that, by virtue of their own actions in connection with discovery, there would have to be extensions of the discovery dates in the current case management order. It does not lie in Knoll's mouth to complain that a 60-day stay pending defendants' change of counsel will be at all prejudicial.

3

13. *K&A Has Been Discharged as Defendants' Counsel and Cannot Take Actions on Their Behalf.* Knoll argues that the Court should order K&A to continue representing defendants even though we have been discharged as defendants' attorneys. This is a bizarre suggestion that is obviously without merit. We cannot ethically make decisions for, and take actions on behalf of, persons who have discharged us as their attorney. Defendants have made clear they do not want us to represent them further in this case, and manifestly they have the right to make that choice.

14. Knoll cites no precedent for the extraordinary propositions it directly and implicitly advances—e.g., that (i) a lawyer can be required to continue rendering legal services for a client who has discharged him; and (ii) a former client can be made to pay a lawyer he has discharged, for legal services the former client has not requested or authorized. It is also at best unclear that a court order could insulate a lawyer from liability for actions he proceeded to take without the authorization of the party that discharged him.

15. K&A has worked diligently on this case and should not penalized for defendants' exercise of their right to discharge us as their lawyers in this proceeding. And defendants should be afforded an adequate period of time to hire new counsel.

Salem M. Katsh

**Exhibit A**



*Salem M. Katsh*
Attorney at Law

64 Main Street
Hastings on Hudson
NY 10706
914.231.7840
646.417.5777(fax)
646.712.1347 (cell)
skatsh @katshlaw.com

February 5, 2012

BY EMAIL
Marc Misthal, Esq.
Gottlieb, Rackman & Reisman
270 Madison Avenue
New York, NY 10016

Re: Knoll, Inc. v. Moderno, Inc. *et al.*, 1:11-cv-00488 (S.D.N.Y.) (AKH)

Dear Marc:

I am writing in connection with Defendants' first document production today.

Preliminarily, we are producing materials that fall into the "eyes only outside counsel" category on the understanding that you will restrict access to your firm's personnel and nothing will be disclosed to Knoll, including any in-house Knoll counsel. If there is a difference of opinion on who may have access to this material, we will resolve it by negotiation or by asking the Court for a ruling. But in the meantime, it's just your firm.

We have classified your document requests into certain broad categories—i.e., documents concerning: (1) corporate structure, officers, directors, employees, affiliations, etc.; (2) promotional materials; (3) Sales of IBIZA items; (4) the procurement of IBIZA items; (5) market studies, surveys and the like; (6) insurance policies; (7) profit and loss information; Knoll.

*Sales/Costs.* Defendants do not maintain files in terms of particular products—thus, there are no IBIZA files as such. Defendants use Authorize.net to handle sales. Given the burden of trying to isolate each IBIZA customer invoice, Defendants have prepared and are producing spreadsheets showing sales data for the IBIZA items. Defendants object to producing customer names or addresses.

In terms of costs, invoices from Defendants' supplier are being produced; if more are found we will produce them.

In terms of profits and losses, we will be producing documents which will allow rough

approximation of profits/losses allocable to the IBIZA items.

**Promotional Materials.** There are very few documents in this category. What Defendants have found (some ads on Craig's List) will be produced.

**Corporate Documents.** Documents relating to the incorporation of Moderno and Urban Mod are being produced, as well as documents disclosing officers, directors and employees. The business, as I'm sure you will appreciate, is extremely lean in terms of personnel.

**Knoll.** Pending further inquiry, the only documents relating to Knoll are the documents relating to Knoll's cease and desist letter and Defendants' response.

I am sure that you will have some questions about some specific document requests and we will be happy to consider any such questions and, if it leads to Defendants being able to identify additional documents subject to production, they will be produced. We can also answer questions you may have about the spreadsheets. As you can see, Defendants have made sales of IBIZA items on a different website from Regencyshop.com. Information regarding the affiliated company that owns this website, and information regarding the sales and purchases of IBIZA items as relates to this website, are being produced.

        Very truly yours,

        Salem M. Katsh