UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
:
:
KNOLL, INC., : **OPINION AND ORDER**
: **GRANTING IN PART AND**
Plaintiff, : **DENYING IN PART**
: **DEFENDANTS' MOTION FOR**
-against- : **LEAVE TO FILE**
: **SUPPLEMENTAL AND**
MODERNO, INC. AND URBAN MOD, INC., : **AMENDED COUNTERCLAIM**
D/B/A REGENCY SHOP and MIKE SAXENA, : **AND SECOND AMENDED**
: **ANSWER**
Defendants. :
: 11 Civ. 488 (AKH)
:
------------------------------------------------------------- x

ALVIN K. HELLERSTEIN, U.S.D.J.:

## I. INTRODUCTION

Defendants have moved for leave pursuant to Fed. R. Civ. P. 15 and 16 to file a supplemental and amended counterclaim and second amended answer. For the reasons stated below, the motion is granted in part and denied in part.

## II. RELEVENT PROCEDURAL HISTORY

Plaintiff filed its initial Complaint on January 24, 2011, and its Amended Complaint, adding Urban Mod, Inc. as a defendant, on October 26, 2011. On November 9, 2011, Defendants filed their initial Answer and Counterclaim. On November 30, 2011, Defendants filed their Amended Answer, which omitted any counterclaim as well as many of the previously asserted affirmative defenses. On December 2, 2011, a Civil Case Management Plan (the "Case Management Plan") was entered, providing that pleadings could be amended without leave of the Court until January 20, 2012.[1]

---

[1] In the parties' proposed case management plan, Defendants stated that it was their position "that the pleadings are complete as of November 30[, 2011]."

1

On July 10, 2012, Defendants moved for leave pursuant to Fed. R. Civ. P. 15 and 16 to file a supplemental and amended counterclaim and second amended answer, submitting therewith their proposed amended pleading (the "Proposed Amended Pleading").

## III. STANDARD OF REVIEW

Fed. R. Civ. P. 15 provides that "[a] party may amend its pleading once as a matter of course," and thereafter "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." However, "[i]t is settled law that when a responsive pleading has been filed and a party seeks an amendment after the pretrial scheduling order, Rule 16 of the Federal Rules of Civil Procedure is controlling and the movant must satisfy the more stringent standard of good cause." Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 103 (S.D.N.Y. 2003) (emphasis omitted); Holmes v. Grubman, 568 F.3d 329, 334-35 (2d Cir. 2009).

Pursuant to Fed. R. Civ. P. 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." See Presbyterian Church Of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) ("Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied where the moving party has failed to establish good cause.") (internal quotation marks omitted).

"Good cause depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (internal quotation marks omitted). That is, "a movant must demonstrate that it has been diligent in its efforts to meet the deadlines" imposed by the pretrial scheduling order. Rambarran v. Mount Sinai Hosp., 2008 WL 850478, at *3 (S.D.N.Y. Mar. 28, 2008). The burden of demonstrating good cause rests with the movant. Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 2012 WL 2161022, at *3 (S.D.N.Y. June 5, 2012).

2

"Courts have found good cause to excuse a movant's late amendment where new information came to light at such a time that the movant could not reasonably have complied with the scheduling order. On the other hand, where the substance of the proposed amendment was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16." 380544 Canada, Inc. v. Aspen Tech., Inc., 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) (citation omitted); See Parker, 204 F.3d at 341; Moore v. Publicis Groupe SA, 2012 WL 2574742, at *3 (S.D.N.Y. June 29, 2012).

When the movant claims such new information has come to light, the movant must indicate what the information is and when it came to light, for "[w]ithout specific information regarding the new evidence at issue and the timing of its discovery . . . the Court is unable to find that [the moving party] has demonstrated good cause . . . ." Rambarran, 2008 WL 850478, at *3.

While the moving party's diligence is the primary factor in the court's good cause inquiry, "[t]he . . . court . . . also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice [the non-moving party]." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). However, the absence of prejudice to a nonmoving party does not, standing alone, satisfy the good cause requirement. Estate of Ratcliffe v. Pradera Realty Co., 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007).

## IV. ANALYSIS

Because Defendants seek to file the Proposed Amended Pleading after the Case Management Plan's January 20, 2012 deadline for amendment without leave of the Court, Defendants must demonstrate good cause sufficient to permit untimely amendment. As

compared to Defendant's Amended Answer, Defendants' Proposed Amended Pleading seeks to add an eleven-count counterclaim and nine affirmative defenses. I analyze each proposed counterclaim count and affirmative defense to determine whether Defendants have demonstrated sufficient good cause to permit amendment.

    a.    **Proposed Counterclaim**

        1.    **Counts I, II, III and IV**

Counts I and II allege tortious interference with contract, Count III alleges tortious interference with prospective business relations and Count IV alleges prima facie tort. All stem from Plaintiff's alleged May and June, 2012, communications with internet service providers hosting Defendants' websites regarding Defendants' alleged trademark infringement. Because the alleged tortious conduct occurred after the Case Management Plan's amendment deadline, Defendants could not have timely amended their pleading to include these claims. Furthermore, Defendants seek to add these claims less than two months after the alleged tortious conduct. Therefore, Defendants have demonstrated sufficient good cause to permit amendment with respect to these claims.

Plaintiff argues that amendment should not be permitted because these claims are futile. See, e.g., Lucente v. IBM Corp., 310 F.3d 243, 258 (2d Cir. 2002). A claim is futile only if it cannot withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Dougherty v. Town of N. Hempsted Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). With respect to each of these claims, however, Defendants have pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That Plaintiff disputes certain of these facts does not render the claims futile.

        2.  **Counts V and VI**

Count V seeks declaratory judgment that Plaintiff's trademarks are functional and Count VI seeks declaratory judgment that Plaintiff's trademarks are aesthetically functional. Defendants admit that these claims "are not based upon the assertion of new facts." Defendants have therefore failed to show good cause with respect to these claims because they rest on information that Defendants knew or should have known in advance of the Case Management Plan's amendment deadline. See e.g., Moore, 2012 WL 2574742, at *3. Furthermore, Defendants included a functionality claim in their initial Answer and Counterclaim before omitting it from their Amended Answer. "Having made a tactical decision to . . . explicitly abandon certain claims . . . [Defendants] will not be excused from the necessary consequences of this decision. In re GE Co. Sec. Litig., 2012 WL 2892376, at *3 (S.D.N.Y. July 12, 2012). Defendants have failed to show good cause with respect to these claims.

### 3. Count VII

Count VII seeks declaratory judgment that Plaintiff's trademarks are generic. Defendants do not identify new information upon which this claim is based, instead arguing that because "[t]he issue of whether the furniture is generic is already being litigated in this case, . . . Defendants do not need to show that they learned of new facts to assert this claim." Yet whether or not this claim is related to issues already in the case, Defendants must show good cause as to why their pleading was not timely amended. Defendants make no such showing. Indeed, Defendants' admission that this claim is related to issues already in the case makes plain that the substance of this claim was known to Defendants before the Case Management Plan's amendment deadline. Defendants have failed to show good cause with respect to this claim.

### 4. Count VIII

Count VIII seeks declaratory judgment that Plaintiff's trademarks have been abandoned. It is subject to the same good cause analysis as Counts V and VI above. Defendants have failed to show good cause with respect to this claim.

### 5. Count IX

Count IX seeks declaratory judgment that Plaintiff's trademarks were registered through fraud on the United States Patent and Trademark Office. Defendants contend that this claim is based on new information but fail to sufficiently identify the new information. Defendants state only that they "have found more details regarding the registration of the trademarks to show that the registration of the trademarks was fraudulent," and that "additional facts concerning the submissions to the USPTO have come to light . . . ." "Without specific information regarding the new evidence at issue . . . the Court is unable to find that [the moving party] has demonstrated good cause . . . ." Rambarran, 2008 WL 850478, at *3. The absence of specificity as to the claimed new information is particularly significant given that Defendants' initial Answer and Counterclaim included such a claim, which was then omitted from Defendants' Amended Answer.

Defendants also contend that they "are still waiting for Plaintiff to produce additional information that would shed more light on this issue," but good cause requires a showing of new information, not a lack of information. Finally, Defendants argue that "Plaintiff has kept alive the claims for fraud by pursuing the issue in discovery." Yet, Plaintiff's discovery efforts do not demonstrate Defendants' diligence. Defendants have failed to show good cause with respect to this claim.

### 6. Count X

Count X seeks declaratory judgment that Plaintiff's trademarks are invalid because the Barcelona Collection was subject to patents. Defendants admit that this claim is not

6

based on new information, but argue for good cause on the basis that "Plaintiff . . . has pursued the issue in discovery," and that the "issues raised by [this] claim[] are already being pursued and litigated in this case." As discussed above, however, these arguments do not demonstrate good cause. Defendants have failed to show good cause with respect to this claim.

### 7. Count XI

Count XI seeks damages for fraudulent registration of Plaintiff's trademarks. In an effort to demonstrate good cause, Defendants contend that this claim is based upon Plaintiff's alleged May and June, 2012, communications with internet service providers hosting Defendants' websites regarding Defendants' alleged trademark infringement. However, Defendants initial Answer and Counterclaim included a claim for declaratory judgment that Plaintiff committed fraud in respect of the trademark registrations it obtained, a claim that was omitted from Defendants' Amended Answer. While the facts alleged in support of damages are new, Defendants have already brought and dropped the underlying fraud claim, as to which no new information is identified. "Having made a tactical decision to . . . explicitly abandon certain claims . . . [Defendants] will not be excused from the necessary consequences of this decision. In re GE Co. Sec. Litig., 2012 WL 2892376, at *3. Furthermore, it is clear that "the substance of the proposed amendment was known to the movant prior to the deadline for amending pleadings." 380544 Canada, 2011 WL 4089876, at *3. Defendants have failed to show good cause with respect to this claim.

### b. Affirmative Defenses

Defendants' Proposed Amended Pleading includes 17 affirmative defenses. As the second, third, fifth, sixth, seventh, ninth, twelfth and thirteenth affirmative defenses appear in Defendants' Amended Answer, I analyze only those affirmative defense that Defendants seek to add by way of the Proposed Amended Pleading.

### 1. First Affirmative Defense

The First Affirmative Defense alleges that Plaintiff's trademark registrations were fraudulently obtained. It is subject to the same good cause analysis as Count IX above. Defendants have failed to show good cause with respect to this defense.

### 2. Fourth Affirmative Defense

The Fourth Affirmative Defense alleges that Defendants' disclaimers prevent any likelihood of confusion. As this defense was struck by the Court pursuant to the March 15, 2012, Summary Order, Defendants contend that the defense is included in the Proposed Amended Pleading solely "to preserve the issues raised in [the] . . . affirmative defense on appeal." Because this defense is already a matter of record, however, Defendants' argument is without merit. Defendants have failed to show good cause with respect to this defense.

### 3. Eighth Affirmative Defense

The Eighth Affirmative Defense alleges that "the Barcelona Collection was in part designed by Lillian Reich and Knoll has failed to allege that it acquired rights from her as it claims it acquired rights from Ludwig Mies van der Rohe." Defendants state that "[i]n conducting research into the historical basis of the Barcelona furniture during discovery, Defendants have come to the conclusion that Lilly Reich is the sole designer of the Barcelona furniture, and that Mies did not design the Barcelona furniture," and that as a result, "Defendants seek to amend their claim to reflect the new information Defendants have learned." However, "[w]hatever additional research led counsel to realize the potential for relief [pursuant to this affirmative defense], that work could have taken place before the initial [answer] was filed" as "[t]he availability of discovery had nothing to do with [this] belated addition . . . ." 380544 Canada, 2011 WL 4089876, at *5. Defendants have failed to show good cause with respect to this defense.

### 4. Tenth Affirmative Defense

The Tenth Affirmative Defense alleges that "the term BARCELONA has become generic as an indication of modern furniture similar to the furniture designed by Ludwig Mies van der Rohe and Lillian Reich," and that "the Barcelona Collection has become generic as a type of modern furniture." It is subject to the same good cause analysis as Count VII above. Defendants have failed to show good cause with respect to this defense.

### 5. Eleventh Affirmative Defense

The Eleventh Affirmative Defense claims antitrust violations and trademark misuse, alleging that "Plaintiff is using the Barcelona Collection trademarks to create a monopoly for Barcelona Collection furniture designs rather than to protect their trademarks in the Barcelona Collection," and that Plaintiff is filing lawsuits against small business owners not to protect its trademarks but to eliminate competition. Defendants allege that this defense is based upon "the recent unlawful activity of Plaintiff" as well as "the information Defendants have learned while conducting research into the historical precedents surrounding the Barcelona furniture." Defendants state that "[i]t was through this research, that Plaintiff's pattern of trademark misuse became apparent, and Plaintiff's recent actions against Defendants illuminated that pattern."

As discussed above, information obtained from Defendant's research regarding "the historical precedents surrounding the Barcelona furniture" does not supporting a finding of good cause as "that work could have taken place before the initial [answer] was filed." 380544 Canada, 2011 WL 4089876, at *5. Furthermore, as to Plaintiff's alleged pattern of trademark misuse, Defendants admit that 19 of the 22 lawsuits Plaintiff is alleged to have filed against small business owners in an effort to eliminate competition were filed prior to this action. Finally, the seventh affirmative defense of Defendants' initial Answer and Counterclaim in part

9

asserted that "this lawsuit is part and parcel of an anticompetitive series of strike suits and agreements in restraint of trade that Knoll has secured from other small companies which Knoll reasonably expected could not afford the costs of litigation and would be forced to enter settlement agreements requiring them to stop selling replicas of the so-called Barcelona items." Clearly "the substance of the proposed amendment was known to the movant prior to the deadline for amending pleadings." 380544 Canada, 2011 WL 4089876, at *3. Defendants have failed to show good cause with respect to this defense.

### 6. Fourteenth, Fifteenth and Sixteenth Affirmative Defenses

The Fourteenth Affirmative Defense alleges that Plaintiff's trademark registrations are invalid because the designs have not acquired distinctiveness or secondary meaning. The Fifteenth Affirmative Defense alleges that Plaintiff's trademark registrations are invalid because the designs are decorative or ornamental features and not trademarks. The sixteenth affirmative defense alleges that Plaintiff's trademark registrations for the BARCELONA word mark are invalid because the word mark is "geographically misdescriptive."

Defendants contend that these defenses are "[b]ased on the research Defendants have conduct during discovery" as well as "based upon facts learned during discovery." Insomuch as the basis of these defenses is information Defendants obtained via their own research (rather than information produced by Plaintiff in discovery), good cause is not demonstrated as "that work could have taken place before the initial [answer] was filed." 380544 Canada, 2011 WL 4089876, at *5. If the basis of these defenses is information learned from discovery, Defendants' statement fails to provide the Court with "specific information regarding the new evidence at issue . . . ." Rambarran, 2008 WL 850478, at *3. While Defendants further contend that "Defendants, in submitting information to the USPTO regarding

10

secondary meaning included affidavits by members of staff that Barcelona furniture had secondary meaning," this statement also fails to provide the Court with sufficient information.

Finally, Defendants contend that they "are still trying to obtain information regarding Plaintiff's registration of their Barcelona furniture trademarks from Plaintiffs," but, as discussed above, good cause depends upon a showing of new information, not a lack of information. Defendants have failed to show good cause with respect to these defenses.

### 7. Seventeenth Affirmative Defense

The Seventeenth Affirmative Defense alleges that Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands. Defendants allege that this defense is based upon "the recent unlawful activity of Plaintiff" as well as "the information Defendants have learned while conducting research into the historical precedents surrounding the Barcelona furniture." Defendants state that "[i]t was through this research, that Plaintiff's pattern of trademark misuse became apparent, and Plaintiff's recent actions against Defendants illuminated that pattern."

As discussed above, information obtained from Defendant's research regarding "the historical precedents surrounding the Barcelona furniture" does not supporting a finding of good cause as "that work could have taken place before the initial [answer] was filed." 380544 Canada, 2011 WL 4089876, at *5. However, insomuch as this defense is based on Plaintiff's alleged May and June, 2012, communications with internet service providers hosting Defendants' websites regarding Defendants' alleged trademark infringement, Defendants could not have timely amended their pleading to include this defense because the alleged improper conduct occurred after the Case Management Plan's amendment deadline. Furthermore, Defendants sought to add this defense less than two months after the alleged improper conduct.

11

Therefore, Defendants have demonstrated sufficient good cause to permit amendment with respect to this defense but solely as to Plaintiff's conduct described above.

## V. CONCLUSION

For the reasons stated above, Defendants' motion is granted in part and denied in part. By September 3, 2012, Defendants shall file an amended answer and counterclaim that is "simple, concise and direct," Fed. R. Civ. P. 8(d)(1), and consistent with this Opinion and Order. The conference scheduled for September 14, 2012, is adjourned to September 21, 2012, at 10:00 a.m.

The Clerk shall mark the motion (Doc. No. 89) terminated.

SO ORDERED.

Dated: August 22, 2012
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge